McINTYRE v. FARMERS & MERCHANTS' BANK.

115  255
116  284

1. GARNISHMENT — BANK DEPOSIT — OWNERSHIP — QUESTION FOR JURY.

Where a wife was impleaded in garnishment proceedings as a claimant of a bank deposit sought to be reached by her husband's creditors, and it appeared that the account had stood for three years in the name of the husband, and that the income from the wife's investments was insufficient to account for all the deposits, and the husband refused to swear that all the deposits belonged to the wife, but stated merely that they were "principally hers," the court was not in error in submitting to the jury the question of the ownership of the fund.

2. SAME—ACCESSION AND CONFUSION.

One who, with his wife's knowledge and consent, mingles his own funds with hers in a bank, with the understanding that the entire fund shall be treated as his, renders the entire fund subject to garnishment for his debt.

3. SAME—BANK CHECKS.

The giving of a check, drawn in the ordinary form, against funds on deposit in a bank, does not, before the acceptance of such check, amount to an equitable assignment of the amount of the check, so as to prevent its garnishment as money of the drawer.

Error to Berrien; Coolidge, J. Submitted October 8, 1897. Decided December 15, 1897.

Garnishment proceedings by John L. McIntyre against the Farmers & Merchants' Bank, as garnishee of Isaac R. Dunning, and Julia A. Dunning, impleaded as claimant of the fund. From a judgment for plaintiff, defendant bank brings error. Affirmed.

Plaintiff, after obtaining a judgment against the defendant Isaac R. Dunning, sued out a writ of garnishment against the garnishee defendant. Its disclosure showed $125.93 in the bank, standing in the name of Mr.

Dunning, and that the bank was informed by him that the money was the property of his wife. She was then impleaded, issue joined, trial had before a jury, and a verdict rendered for the plaintiff. The errors assigned are:

(1) That the court should have directed a verdict for the defendant, for the reason that there was no evidence to dispute Mrs. Dunning's title to the property.

(2) That the court erred in instructing the jury that, if she gave the money to her husband, then it belonged to him, and was subject to garnishment.

(3) That the court erred in instructing the jury that, if the money of the husband and wife was mingled in such a way that it was impossible to distinguish what was his and what was hers, the plaintiff was entitled to recover.

(4) That two checks drawn by Mr. Dunning prior to the issuance of the writ of garnishment, but not presented and paid until after the service of the writ, were assignments, *pro tanto*, of the fund.

*G. M. Valentine*, for appellant.

*Gore & Harvey*, for appellee.

GRANT, J. (*after stating the facts*). 1. We cannot concur in the contention that the proofs conclusively showed that the money belonged to Mrs. Dunning. The entire bank account, extending from April, 1893, to February 2, 1896, was in evidence, and stood in the name of Mr. Dunning. He did not swear that all these deposits belonged to his wife. He said they were "principally hers." When asked if he would swear that he never made a deposit of his own money, he replied: "Not exactly. The money that was deposited there was deposited for her." Nearly all the investments from which she received an income were made with money received from him. The income from her investments was not sufficient to account for all the deposits. From these facts, as well as others, it is clear that the testimony of Mr. and Mrs. Dunning that the money was hers, and was deposited for her, was not conclusive. The facts were in apparent con-

tradiction of their testimony. In such case the question was for the jury.

2. While there was no direct testimony that she gave money to him which she received from her investments, yet the facts and circumstances would justify the conclusion that she gave it to him to be used as his own.

3. There was evidence from which the jury might very properly infer that he, with her knowledge and consent, mingled his own funds with hers in the bank, with the understanding that the entire fund was to be treated as his own. If this were so, then the fund was subject to garnishment for his debt. In reply to the question whether he mingled his own money with his wife's, he replied, "Not to any extent."

4. The checks did not operate as equitable assignments of the fund. *Grammel* v. *Carmer*, 55 Mich. 201 (54 Am. Rep. 363); 2 Am. & Eng. Enc. Law (2d Ed.), 1065. The rule is there stated as follows:

"The doctrine which prevails in England, and is sustained by the weight of authority in the United States, is that an unaccepted check, drawn in the ordinary form, not describing any particular fund, or using words of transfer of the whole or any part of any amount standing to the credit of the drawer, is of the same legal effect as a bill of exchange, and does not amount to an assignment, at law or in equity, of the money to the credit of the holder, but is simply an order which may be countermanded, and the payment of which may be forbidden by the drawer, at any time before it is actually cashed."

It follows that the writ of garnishment, having been served before the presentation of the checks, entitled the plaintiff to have the fund applied upon his judgment.

The judgment is affirmed.

The other Justices concurred.